**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | |
| | ) | **C O M P L A I N T** |
| | ) | |
| **U-HAUL INTERNATIONAL, INC.,** | ) | **JURY TRIAL DEMAND** |
| **d/b/a U-HAUL COMPANY OF** | ) | |
| **TENNESSEE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the bases of race, retaliation, and constructive discharge and to provide appropriate relief to Nathaniel Baldwin and other African-American employees who were adversely affected by such practices. As alleged with greater particularity below, the Commission alleges that Defendant U-Haul International, Inc. d/b/a U-Haul Company of Tennessee, allowed its managers and employees to subject Mr. Baldwin and a class of African-American employees to constant unwelcome racial harassment, including racial slurs and other offensive comments. In addition, Defendant retaliated against Adrion Stafford and constructively discharged Jerry "Bobo" Taylor.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This is an action authorized and instituted pursuant to § 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3)  ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Tennessee, Western Division.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by § 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000-5(f) (1) and (3).

4.     At all relevant times, Defendant, U-HAUL INTERNATIONAL, INC. d/b/a U-HAUL COMPANY OF TENNESSEE, (the "Employer") has continuously been doing business in the State of Tennessee and the City of Memphis, and has continuously had at least fifteen employees.

5.     At all relevant times, Defendant Employer has continuously been and is now an employer engaged in an industry affecting commerce within the meaning of § 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).  Defendant Employer is a moving company that provides its customers with rental moving vans and trailers for use in moving household goods.

## STATEMENT OF CLAIMS

6.     More than thirty days prior to the institution of this lawsuit, Nathaniel Baldwin filed a charge with the Commission alleging violations of Title VII by Defendant Employer.  All conditions precedent to the institution of this lawsuit have been fulfilled.

7.     Since at least 2007, Defendant Employer has engaged in unlawful employment practices at its facility located at 3020 Lamar Avenue in Memphis, Tennessee in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

8.     The unlawful employment practices involved subjecting Nathaniel Baldwin to a racially hostile work environment because of his race, Black.

   a.     Defendant Employer hired Nathaniel Baldwin as a full-time Mechanic Express Specialist on September 26, 2005. His employment ended on September 17, 2008.

   b.     Beginning in January 2007, Baldwin reported to Shop Manager Patrick Chapman, a Supervisor.

   c.     Chapman regularly used racial slurs to degrade and demean Baldwin and other Black employees.

   d.     Chapman frequently used the word "nigger" when talking to or referring to Baldwin and other Black employees.

   e.     Baldwin also claims Lauren Renfrow, Chapman's daughter-in-law, subjected Black employees to inappropriate racial comments.

   f.     Chapman hired Renfrow as a Wash Bay Employee in 2007. Chapman then recommended that Defendant Employer promote Renfrow to a parts employee position, which it did.

   g.     Renfrow also used racially offensive language, including referring to Baldwin as "Black boy" and "nigger."

   h.     She openly referred to African-Americans as "niggers."

   i.     As Shop Supervisor, Chapman knew that Renfrow used racial slurs.

j.   Defendant Employer had no written policy against racial harassment.

k.   The unwelcome racial harassment was sufficiently severe or pervasive to alter the terms and conditions of Baldwin's employment and to create an abusive working environment.

l.   Defendant Employer is vicariously liable for the racial harassment of Baldwin because of Chapman's status as Supervisor at Defendant Employer's facility.

9.   The effect of the practices complained of in Paragraph 8 a-l has been to deprive Baldwin of equal employment opportunities and to otherwise adversely affect his status as an employee because of his race, Black.

10.   Since at least 2007, Defendant Employer has engaged in unlawful employment practices at its facility located at 3020 Lamar Avenue in Memphis, Tennessee in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

11.   The unlawful employment practices involved subjecting Adrion Stafford to unwelcome racial harassment because of his race, Black.

a.   Defendant Employer hired Stafford as a Van Body Technician in October 2007. His employment ended in February 2008.

b.   Chapman was Stafford's immediate Supervisor.

c.   Stafford heard Chapman and Lauren Renfrow use racial slurs.

d.   Chapman called Stafford a "nigger" and a "boy." Stafford would sometimes sit in his car during lunch break and Chapman told him, "I can't see why a nigger has to go out to his car and smoke pot or a crack pipe."

e.   On many occasions, Renfrow called Stafford "nigger" and "stupid nigger."

f.   The unwelcome racial harassment was sufficiently severe or pervasive to alter the

terms and conditions of Stafford's employment and to create an abusive working environment.

g.       Defendant Employer is vicariously liable for the racial harassment of Stafford because of Chapman's status as supervisor at Defendant Employer's facility.

12.    The effect of the practices complained of in Paragraph 11 a-g has been to deprive Stafford of equal employment opportunities and to otherwise adversely affect his status as employee because of his race, Black.

13.    Since at least 2007, Defendant Employer has engaged in unlawful employment practices at its facility located at 3020 Lamar Avenue in Memphis, Tennessee in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

14.    The unlawful employment practices involved subjecting Adrion Stafford to retaliation by terminating his employment.

a.       On many occasions, Stafford complained to Chapman about the racial slurs and asked him to take action to stop the harassment.

b.       Defendant Employer had no written policy against racial harassment.

c.       But the harassment continued, so Stafford complained directly to Marketing Company President Carolyn George.

d.       George said she could not take Stafford's word over Chapman's.

e.       Shortly thereafter, Defendant Employer fired Stafford for insubordination.

15.    The effect of the practices complained of in Paragraph 14 a-e has been to deprive Stafford of equal employment opportunities and to otherwise adversely affect his employment in retaliation for complaining about the unlawful employment practices.

16.    Since at least 2007, Defendant Employer has engaged in unlawful employment

practices at its facility located at 3020 Lamar Avenue in Memphis, Tennessee in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

17.     The unlawful employment practices involved subjecting Chris Taylor to unwelcome racial harassment because of his race, Black.

    a.     Chris Taylor worked for Defendant Employer as a Van Body Technician until his discharge in the Spring of 2008.

    b.     Chapman and Renfrow also subjected Taylor to racial comments, including making jokes about Black employees and referring to the Black employees as "niggers."

    c.     While working, Taylor fell from a ladder and sustained serious injuries. When Chapman learned of Taylor's fall, he asked, "What kinda monkey can climb a tree but not a ladder?"

    d.     Taylor took a medical leave of absence.

    e.     When Taylor eventually reported back to work, Chapman fired him. When Taylor asked what he had done to cause his termination, Chapman said, "Go home nigger."

    f.     The unwelcome racial harassment was sufficiently severe or pervasive to alter the terms and conditions of Chris Taylor's employment and to create an abusive working environment.

    g.     Defendant Employer is vicariously liable for the racial harassment of Taylor because of Chapman's status as supervisor at Defendant Employer's facility.

18.     The effect of the practices complained of in Paragraph 17 a-h has been to deprive Chris Taylor of equal employment opportunities and to otherwise adversely affect his status as

employee because of his race, Black.

19.    Since at least 2007, Defendant Employer has engaged in unlawful employment practices at its facility located at 3020 Lamar Avenue in Memphis, Tennessee in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

20.    The unlawful employment practices involved subjecting Jerry "Bobo" Taylor to unwelcome racial harassment because of his race, Black.

     a.    During the relevant time period, Defendant Employer hired Jerry "Bobo" Taylor as a Heavy Equipment Mechanic.

     b.    Chapman often referred to Bobo as "his nigger" and said all he was missing was "the paperwork."  Chapman also called Bobo his "modern day slave."

     c.    A White co-worker named Justin would also call Bobo a "nigger."

     d.    Defendant Employer subjected Bobo to a racially hostile work environment.

     e.    The unwelcome racial harassment was sufficiently severe or pervasive to alter the terms and conditions of Jerry "Bobo" Taylor's employment and to create an abusive working environment.

21.    The effect of the practices complained of in Paragraph 20 a-e has been to deprive Jerry "Bobo" Taylor of equal employment opportunities and to otherwise adversely affect his status as employee because of his race, Black.

22.    Since at least 2007, Defendant Employer has engaged in unlawful employment practices at its facility located at 3020 Lamar Avenue in Memphis, Tennessee in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

23.    The unlawful employment practices involved subjecting Jerry "Bobo" Taylor to constructive discharge because of his race, Black.

a.     During the relevant time period, Defendant Employer hired Jerry "Bobo" Taylor as a Heavy Equipment Mechanic.

b.     Chapman often referred to Bobo as "his nigger" and said all he was missing was "the paperwork."  Chapman also called Bobo his "modern day slave."

c.     A White co-worker named Justin would also call Bobo a "nigger."

d.     Defendant Employer subjected Bobo to other racial slurs.

e.     Defendant Employer subjected Bobo to a racially hostile work environment.

f.     The unwelcome racial harassment was sufficiently severe or pervasive to alter the terms and conditions of Jerry "Bobo" Taylor's employment and to create an abusive working environment.

g.     Bobo quit because of the racial harassment.

24.     The effect of the practices complained of in Paragraph 23 a-g has been to deprive Jerry "Bobo" Taylor of equal employment opportunities and to otherwise adversely affect his status as employee because of his race, Black.

25.     The unlawful employment practices involved subjecting Blacks as a class to racial harassment because of their race.

a.     Between 2007 and 2008, a class of Black employees, including Zeke Anderson, Willie Lewis and Earl Everett, worked for Defendant Employer.

b.     The racial harassment experienced by the Black employees included use of racial comments and slurs by Chapman, Renfrow, and other White employees.

c.     Defendant Employer had no written policy against racial harassment.

d.     The unwelcome racial harassment was sufficiently severe or pervasive to alter the terms and conditions of Anderson, Lewis, Everett, and other Black employees'

employment and to create an abusive working environment.

    e.    Defendant Employer is vicariously liable for the racial harassment of these employees because of Chapman's status as supervisor at Defendant Employer's facility.

26.    The effect of the practices complained of in Paragraph 22-25 has been to deprive Anderson, Lewis, Everett and other Black employees of equal employment opportunities and to otherwise adversely affect their status as employees because of their race, Black.

27.    The unlawful employment practices complained of in Paragraphs 8-25 above were intentional.

28.    The unlawful employment practices complained of in Paragraphs 8-25 above were done with malice or reckless indifference to the federally protected rights of Nathaniel Baldwin, Adrion Stafford, Chris Taylor, Jerry "Bobo" Taylor and a class of Black employees.

## PRAYER FOR RELIEF

**THEREFORE**, the Commission respectfully requests that this Court:

    A.    Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any employment practices that permit or condone racial harassment.

    B.    Order Defendant Employer to institute and carry out policies, practices and programs which provide equal employment opportunities for Black employees, and which eradicate the effects of its past and present unlawful employment practices.

    C.    Order Defendant Employer to make whole Nathaniel Baldwin, Adrion Stafford, Chris Taylor, Jerry "Bobo" Taylor and a class of Black employees by providing appropriate

backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful place hiring, reinstatement, and frontpay.

D.      Order Defendant Employer to make whole Nathaniel Baldwin, Adrion Stafford, Chris Taylor, Jerry "Bobo" Taylor and a class of Black employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 8-25 above, including job search expenses, and medical expenses in amounts to be determined at trial.

E.      Order Defendant Employer to make whole Nathaniel Baldwin, Adrion Stafford, Chris Taylor, Jerry "Bobo" Taylor and a class of Black employees by providing compensation for nonpecuniary losses, including emotional pain and suffering, in amounts to be proven at trial.

F.      Order Defendant Employer to pay punitive damages for its malicious and reckless conduct described in Paragraphs 8-25 above, in amounts to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

H.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

**P. DAVID LOPEZ**
General Counsel

**JAMES LEE**
Deputy General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel

s/ Faye A. Williams (with permission AC)
**FAYE A. WILLIAMS**
Regional Attorney
Tennessee Bar No. 011730

Joseph M. Crout (with permission AC)
**JOSEPH M. CROUT**
Supervisory Trial Attorney
Tennessee Bar No. 012857

s/ Anica Conner
**ANICA C. CONNER**
Senior Trial Attorney
Tennessee Bar No. 025325

**EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION**
Memphis District Office
1407 Union Avenue, Suite 901
Memphis, TN  38104
(901) 544-0087