**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT** | ) | |
| **OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 11-2844-STA-dkv** |
| | ) | |
| **U-HAUL INTERNATIONAL, INC. d/b/a** | ) | |
| **U-HAUL COMPANY OF TENNESSEE** | ) | |
| **and U-HAUL COMPANY OF** | ) | |
| **TENNESSEE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

**ORDER DENYING DEFENDANT U-HAUL INTERNATIONAL, INC.'S MOTION TO
DISMISS**

_____

Before the Court is Defendant U-Haul International, Inc.'s ("Defendant") Motion to

Dismiss (D.E. # 14), filed on January 30, 2012.  Plaintiff filed a Response with accompanying

declarations (D.E. # 18) on March 1, 2012.  Defendant filed a Reply (D.E. # 21) on March 14,

2012.  For the following reasons, Defendant's Motion is **DENIED**.

**BACKGROUND**

Plaintiff filed its Complaint against Defendant under Title VII of the Civil Rights Act of

1964 ("Title VII") for unlawful employment practices on the bases of race, retaliation, and

constructive discharge for several employees at Defendant's Lamar Avenue location in

Memphis, Tennessee.  (D.E. # 1 at 1.)  After Defendant moved for an extension of time to

respond to the Complaint, Plaintiff filed an Amended Complaint (D.E. # 8) on January 13, 2012,

which added Defendant U-Haul Company of Tennessee ("U-Haul Tennessee") as a party and

alleged that Defendant and U-Haul Tennessee had been continuously doing business in

Tennessee and the City of Memphis. Throughout the Amended Complaint's factual allegations,

Plaintiff alleges that the "Defendant Employers" engaged in unlawful employment practices.

(Compl., D.E. # 8, at 3-9.) Shortly after Plaintiff filed its Amended Complaint, Defendant filed

its Motion to Dismiss for lack of personal jurisdiction. U-Haul Tennessee filed an Answer (D.E.

# 24) on March 23, 2012; therefore, it is not a party to this Motion to Dismiss.

As discussed below, the Court will evaluate this Motion on the declarations presented by

Plaintiff. As such, it will go through those declarations' factual bases and other facts relevant to

its jurisdictional analysis.[1] In his initial filing, Defendant's employee Nathaniel Baldwin

("Claimant Baldwin") listed his employer as "U-Haul" located at 3020 Lamar in Memphis.

(EEOC Charge, D.E. # 14-2, at 1.) Plaintiff then issued its Letter of Determination, which

identified U-Haul Tennessee as Baldwin's employer; Defendant was not mentioned in the Letter

of Determination. (Letter of Determination, D.E. # 14-3, at 3.) Although the Tennessee

Secretary of State's website shows that U-Haul Tennessee is a registered corporation doing

---

[1]    In addition to the declarations submitted by Plaintiff in response to this
jurisdictional challenge, Defendant submitted several documents along with its Motion. (D.E. #
14-2, 14-3, 14-4.) Although the Court's reliance on these documents outside the pleadings
would ordinarily turn Defendant's Motion into a Motion for Summary Judgment, the Sixth
Circuit has noted that courts "may consider the Complaint and any exhibits attached thereto,
public records, items appearing in the record of the case[,] and exhibits attached to [the]
defendant's motion to dismiss so long as they are referred to in the Complaint and are central to
the claims contained therein." *Zibbell v. Mich. Dep't of Human Servs.*, 313 F. App'x 843, 846
(6th Cir. 2009). Because Plaintiff is required to show that it exhausted its administrative
preconditions prior to bringing suit, and those preconditions are central to the claims before the
Court, the Court finds that its reliance on the documents submitted by Defendant is proper.

business in Tennessee, it does not similarly list Defendant, possibly because U-Haul Tennessee

is a wholly-owned subsidiary of Defendant. (Def.'s Mot., D.E. # 14-1, at 3.) Defendant submits

that it "is not registered to do business in Tennessee, has no officers or agents in Tennessee,

owns no property in Tennessee, employs no personnel in Tennessee, and does not do business in

Tennessee." (*Id.*)

In its Response, Plaintiff provided several declarations by various claimants (collectively

"the Claimants") setting forth jurisdictional facts. Claimant Willie Lewis, Jr. ("Claimant

Lewis") "worked at U-Haul on Lamar Avenue" from 1996 to 2011. (Decl. of Claimant Lewis,

D.E. # 18-2, at 1.) He received a Notice of Levy on Wages from Defendant in Februray of 2012,

and the mailing envelope accompanying ths Notice lists Defendant's name and Phoenix,

Arizona, as the return address. (*Id.*) Claimant Lewis also received letters regarding his

retirement benefits and his worker's compensation from Defendant's Risk Management

Department. (*Id.* at 1-2.) Defendant's name and Arizona address are on Claimant Lewis' Year-

to-Date Statements of Earnings from 2002-2005. (*Id.* at 2.) Additionally, Claimant Lewis' W-2

forms from 2005, 2006, and 2009 all list Defendant's Arizona address in the employer field.

(*Id.*) Defendant also provided Claimant Lewis with a notice regarding its Employment Dispute

Resolution Policy and an Agreement to Arbitrate. (*Id.*)

Defendant's president of Phoenix Operations issued a document to Claimant Lewis

entitled "No Solicitation—No Distribution." (*Id.*) Defendant's name and Arizona address are

listed on Claimant Lewis' direct deposit form. (*Id.* at 3.) Questions or concerns about the

Equipment Safety Guide were to be directed to U-Haul Safety in Phoenix, Arizona. (*Id.*) An

employee at a different U-Haul facility in Memphis suggested that Claimant Lewis call Jan

Raymond in Human Resources in Phoenix with 401(k) and worker's compensation questions, and Claimant Lewis spoke with her approximately five to ten times. (*Id.*) Jacque Owens ("Owens"), who worked at "corporate" in Human Resources in Phoenix, came to the Lamar Avenue facility to "investigate the race discrimination allegations." (*Id.* at 4.)

Claimant Baldwin "worked at U-Haul on Lamar Avenue from 2005 to 2008." (Decl. of Claimant Baldwin, D.E. # 18-3, at 1.) His 401(k) form instructed him to sent the completed form to U-Haul Human Resources Retirement Benefits Division in Phoenix, Arizona, and he received emails from Defendant's Phoenix office regarding 401(k) and benefits information. (*Id.* at 1-2.) Claimant Baldwin was also told to call the Phoenix office with questions regarding his 401(k). His 2005 W-2, issued by U-Haul Tennessee, listed Defendant's Arizona address in the employer box. (*Id.* at 1.) Claimant Baldwin believed that Phil Ryan's ("Ryan") office was in Phoenix, and Ryan came to the Lamar facility approximately six times to "check on everything and make sure everything was being run properly." (*Id.* at 2.) Carol George ("George") would give the employees advance notice that Ryan was coming, and she would give a similar notice when other individuals from Phoenix came to the Lamar facility. (*Id.*) Claimant Baldwin observed an individual, whom he believes to be Larry Rock ("Rock"), come to the Lamar facility on approximately two occasions. (*Id.*) George provided advance notice of Rock's visits, and Rock demonstrate new systems and helped train the workers. (*Id.*) Additionally, the Lamar facility had a posting in the lunchroom telling employees to call the Phoenix office to report stealing. (*Id.*)

Defendant's management in Phoenix provided a safety training DVD, and Claimant Baldwin watched that DVD as part of his training. (*Id.*) After Claimant Baldwin was

terminated, he called Defendant's Phoenix office regarding his separation notice from U-Haul. (*Id.* at 3.) According to Claimant Baldwin, the individual he spoke with at the Phoenix office told him that he was not fired. (*Id.*) Later, the Phoenix office called him back and told him to speak with George, who would give him an employee number. (*Id.*) George refused to reinstate Claimant Baldwin because he "went over her heard." (*Id.*)

Claimant Zeke Anderson, Jr. ("Claimant Anderson") began working "at U-Haul on Lamar Avenue in 2008," and he is still employed there. (Decl. of Claimant Anderson, D.E. # 18-4, at 1.) Claimant Anderson's W-2, issued by U-Haul Tennessee, lists a Phoenix, Arizona address in the employer box. (*Id.*) Owens, Defendant's Manager of Employee Relations, gave Claimant Anderson her business card when she journeyed from Defendant's corporate office to the Lamar facility in 2009 or 2010 to talk to him about race discrimination at the Lamar facility. (*Id.*) Owens was accompanied by another woman, and they told Claimant Anderson that they were from corporate in Phoenix. (*Id.* at 2.) Owens ended their meeting by indicating that "they" were investigating the charges of discrimination and that Claimant Anderson could call her if he had any problems. (*Id.*)

Claimant Anderson also had a meeting with Chuck Hertzler ("Hertzler"), an executive vice president for U-Haul Business Consultants working out of Phoenix, Arizona. (*Id.*) Hertzler came to the Lamar facility in the fall of 2010 to help the parts department input information into the computer properly. (*Id.*) At the meeting, Hertzler handed out his business card, listing Defendant's Arizona address, and told the employees that they could call him at the numbers listed on the card. (*Id.*) Additionally, on-site management at the Lamar facility told Claimant Anderson to call the corporate telephone number for help with questions regarding health

insurance, benefits, or 401(k) issues. (*Id.*) Claimant Anderson received a bulletin titled "U-Haul Savvy Health Care Consumer Alert" which listed contact information as the U-Haul Human Resources Benefits and Compensation Division in Phoenix, Arizona. (*Id.* at 2-3.) Claimant Anderson received two pieces of mail listing Defendant's address in Phoenix, Arizona, as the return address: a letter from Defendant's Director of Operations in its Human Resources Department and a letter from its Vice President of Human Resources. (*Id.* at 3.)

Claimant Anderson recalls that Ryan would visit the Lamar facility from Phoenix every two to three months to either ask "how things were going" or attend a company function, such as a health fair. (*Id.* at 3-4.) His visits would last one to two days. (*Id.* at 4.) Generally, on-site management would tell the employees when individuals came from the Phoenix office. (*Id.*) Individuals from corporate would also perform surprise inspections to ensure that the trucks received the proper maintenance and worked correctly. (*Id.*) Claimant Anderson recalls seeing two individuals from Defendant's corporate headquarters come to the Lamar facility on three separate occasions, one of whom may have been Rock. (*Id.*) These individuals would check brakes, batteries, and other maintenance issues. (*Id.*) On another occasion, Claimant Anderson saw an individual from Phoenix inspecting the Lamar facility to decide whether to expand and build a restroom. (*Id.*)

Additionally, either Ryan or Joe Shoen ("Shoen") came from Phoenix to speak with Claimant Anderson and ask him whether he wanted to take some training courses through "U-Haul University" and that online courses would be paid for. (*Id.*) Claimant Anderson took online classes through U-Haul University in 2011. (*Id.* at 4-5.) Shoen, who worked at

Defendant's corporate Phoenix office, would email Claimant Anderson from time to time about various topics, including health insurance. (*Id.* at 5.)

Claimant Adrion Stafford ("Claimant Stafford") "worked at the U-Haul location on Lamar Avenue from around October 2007 to February 2008." (Decl. of Claimant Stafford, D.E. # 18-4, at 1.) During Claimant Stafford's time at the Lamar facility, Pat Chapman ("Chapman") worked as his direct supervisor. (*Id.*) George was Chapman's supervisor. (*Id.*) Claimant Stafford observed several individuals from "from corporate" at the Lamar facility, and at least once, Chapman told the employees that "the individuals who came from corporate to the Lamar facility were there to inspect." (*Id.*) Claimant Stafford "called corporate in Phoenix" at least twice regarding his employment, and he knew to call Defendant's office in Arizona because the corporate telephone number was listed on the U-Haul website he used to access his pay stubs. (*Id.* at 1-2.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides that "a party may assert . . . by motion [the defense of] lack of personal jurisdiction."[2] The party seeking to assert jurisdiction bears the burden of demonstrating that such jurisdiction exists.[3] When district courts do not conduct an evidentiary hearing on the personal jurisdiction issue, plaintiffs only need to make a prima facie showing of jurisdiction.[4] In this situation, courts are not to consider facts proffered by the

---

[2]     Fed. R. Civ. P. 12(b)(2).

[3]     *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

[4]     *Id.*

defendant that conflict with those offered by the plaintiff, and they construe the facts in a light most favorable to the nonmoving party.[5]

When a case is in federal court because of federal question jurisdiction, personal jurisdiction over a defendant exists "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process."[6] When the state's long-arm statute extends to the limits of the due process clause, "the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process."[7] Tennessee's "long-arm statute has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause;"[8] as such, the Court's inquiry is limited to whether its exercise of personal jurisdiction over Defendant is consistent with federal due process requirements. After all, "a district court can exercise jurisdiction over any person [or entity] subject to the jurisdiction of the state in which it sits."[9]

## ANALYSIS

---

[5]  *Id.*

[6]  *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (alteration in original).

[7]  *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003) (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996)).

[8]  *Id.* (quoting *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 454 (6th Cir. 1993)). Indeed, Tennessee's long-arm statute extends jurisdiction on "[a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20-2-214(a)(6).

[9]  *Crouch v. Honeywell Int'l, Inc.*, 682 F. Supp. 2d 788, 792 (W.D. Ky. 2010).

Two types of personal jurisdiction exist: general and specific.  General jurisdiction

depends on a showing that the defendant has continuous and systematic contacts with the forum

state justifying the state's exercise of judicial power with respect to claims the plaintiff may have

against the defendant.[10]  On the other hand, specific jurisdiction exposes the defendant to suit in

the forum state only on claims that "arise out of or relate to" a defendant's contacts with the

forum.[11]  Here, although Plaintiff has asserted that the Court has both general and specific

jurisdiction over Defendant, the Court will begin its evaluation with specific jurisdiction.  The

Court notes that it has been presented with a properly supported Rule 12(b)(2) Motion; as such,

it has three options: it "may determine the motion on the basis of affidavits alone; . . . permit

discovery in aid of the motion; or . . . conduct an evidentiary hearing on the merits of the

motion."[12]

Plaintiff requests the Court to decide the Motion on its declarations alone, but if the Court

is inclined to grant the Motion, Plaintiff requests either an evidentiary hearing or additional

discovery and briefing.  On the other hand, Defendant requests discovery and briefing on a full

record based on Plaintiff's corporate fiction arguments.  Because the Court's holding does not

rest solely on the corporate relationship between Defendant and U-Haul Tennessee, the Court

finds that a hearing and additional discovery would not be beneficial.  Additionally, other than

stating that it expects many of the statements in the declarations to ultimately be false, Defendant

---

[10] *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-15 nn.8-10 (1984); *Third Nat'l Bank in Nashville v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989).

[11] *Helicopteros*, 466 U.S. at 414-15 nn.8-10; *WEDGE*, 882 F.2d at 1089.

[12] *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (quoting *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

did not provide evidence in its Motion or Reply which conflicts with Plaintiff's declarations.

Therefore, a hearing to resolve a factual dispute is not required. Therefore, the Court elects to

decide this Motion on Plaintiff's declarations.

The Sixth Circuit has established a three-part test to determine whether specific

jurisdiction exists:

> First, the defendant must purposefully avail [it]self of the privilege of acting in
> the forum state or cause a consequence in the forum state. Second, the cause of
> action must arise from the defendant's activities there. Finally, the acts of the
> defendant or consequences caused by the defendant must have a substantial
> enough connection with the forum state to make the exercise of jurisdiction over
> the defendant reasonable.[13]

This *Southern Machine* test "simply applies in a specific fashion the broad rule requiring

substantial minimum contacts as a basis for jurisdiction."[14]

The first element, purposeful availment, prevents defendants from being "haled into a

jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the

'unilateral activity of another party or third person.'"[15] Although physical presence is not

required, jurisdiction is proper when the contacts proximately result from actions by the

defendant that create a substantial connection with the forum state.[16] Notably, "parties who

'reach out beyond one state and create continuing relationships and obligations with citizens of

---

[13] *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

[14] *Id.* (quoting *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 226 (6th Cir. 1972)).

[15] *Burger King Corp. v. Rudzewicz*, 471 US. 462, 475 (1985).

[16] *Id.*

another state' are subject to regulation and sanctions for the consequences of their activities."[17]

An alleged parent's control over a subsidiary is merely one factor to be considered.[18]

The second element, that the plaintiff's cause of action must "arise from" the defendant's contacts with the forum state, is satisfied if the cause of action is "made possible by" or "lie[s] in the wake of" the defendant's contacts or if it is "related to" or "connected with" the defendant's contacts with the forum state.[19] This second element is a lenient standard, and the cause of action need not "formally" arise from the defendant's contacts.[20]

The third element, reasonableness, exists because "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities."[21] When the first two elements are met, "an inference of reasonableness arises," and "only the unusual case will not meet this third criteria."[22] To determine whether the exercise of jurisdiction is reasonable, courts consider the following nonexhaustive list of factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy.[23]

---

[17]    *Air Products*, 503 F.3d at 551 (quoting *Burger King*, 471 U.S. at 473).

[18]    *Dean*, 134 F.3d at 1273.

[19]    *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 2008); *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003).

[20]    *Bird*, 289 F.3d at 875.

[21]    *Air Products*, 503 F.3d at 554 (quoting *Burger King*, 471 U.S. at 477-78).

[22]    *Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir. 1991).

[23]    *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).

In its Motion, Defendant argues that it is not subject to personal jurisdiction in Tennessee under either a general or specific jurisdiction theory.[24] Defendant avers that its contacts with Tennessee exist because it is the ultimate corporate parent of U-Haul Tennessee, and the mere fact that its subsidiary is present in Tennessee does not create personal jurisdiction over it.[25] Additionally, Defendant argues that Plaintiff's Letter of Determination precludes it from suing Defendant, as Plaintiff determined that U-Haul Tennessee was the sole respondent for which reasonable cause existed to believe that it discriminated.[26] Defendant argues that Plaintiff should be bound by its Letter of Determination and should not be permitted to sue it.[27]

In response, Plaintiff asserts that Tennessee has both general and specific jurisdiction over Defendant. It points out that Defendant was not a passive owner of U-Haul Tennessee and that it "continuously and systematically conducted business in Tennessee."[28] Plaintiff identifies several categories of Defendant's contacts with Tennessee which culminate in the propriety of general personal jurisdiction: Defendant's management and shop oversight in Memphis, its oversight of safety and training in Memphis, its involvement in and responsibility for investigating employment discrimination issues in Memphis, its management of employee benefits and payroll matters.[29] As for specific jurisdiction, Plaintiff argues that Defendant

---

[24]     (Def.'s Mot., D.E. # 14-1, at 4.)

[25]     (*Id.*)

[26]     (*Id.* at 5.)

[27]     (*Id.* at 6.)

[28]     (Pl.'s Resp., D.E. # 18-1, at 5.)

[29]     (*Id.* at 6-14.)

purposefully availed itself of Tennessee by acting in the forum: it traveled to the Lamar Avenue

facility, inspected quality control, disseminated policies and safety instructions, and reviewed U-

Haul Tennessee's operations.[30]  Second, Plaintiff states that Defendant interjected itself into the

employment relationship by being a contact for workplace harassment and conducting an

internal investigation into race discrimination allegations at the U-Haul Tennessee facility.[31]

Finally, Plaintiff submits that, because it has demonstrated the first two elements of specific

jurisdiction, it has demonstrated that Defendant has a substantial connection to Tennessee so as

to render the exercise of jurisdiction reasonable.[32]  Alternatively, Plaintiff requests an evidentiary

hearing if the Court finds that the contacts discussed above are insufficient to establish personal

jurisdiction.[33]

   Plaintiff also submits that it satisfied all conditions precedent necessary for it to bring suit

against Defendant.  It relies on its general and specific jurisdiction evidence and argues that

Defendant "continuously and systematically conducts business in the State of Tennessee in

conjunction with and under the name [U-Haul Tennessee].  Thus, [Plaintiff] made a

determination with respect to both [Defendant and U-Haul Tennessee], as they were conducting

business in Tennessee under the same name."[34]  It further asserts that Defendant was on notice

---

[30]     (*Id.* at 16.)

[31]     (*Id.* at 16-17.)

[32]     (*Id.* at 17.)

[33]     (*Id.* at 18-19.)

[34]     (*Id.* at 18.)

about the charge of discrimination and was involved in Plaintiff's investigation, determination, and conciliation processes.[35]

In its final argument, Plaintiff asserts that Defendant and U-Haul Tennessee are an integrated enterprise, and both entities qualify as Claimants' employer. Plaintiff argues that because Defendant was directly involved in U-Haul Tennessee's human resources, labor relations, employee benefits, and employment discrimination issues, they operate as an integrated enterprise.[36] Plaintiff states that although integrated enterprise claims are generally dismissed at summary judgment, they are not usually dismissed before discovery commences.[37]

In reply, Defendant points out that Plaintiff submitted 118 pages of evidentiary material, and in light of that volume of evidence, it argues that the Court should let the case go to discovery and submit a full record upon which to decide the issue of personal jurisdiction.[38] It believes that many of Plaintiff's alleged facts are unsupported conclusions potentially arising from "arm's length service contract" for payroll processing and the provision of legal services.[39] Defendant also implies that the Court should not decide the issue of whether Defendant and U-Haul Tennessee are an integrated enterprise until summary judgment, as it is a liability issue rather than a jurisdictional issue.[40]

---

[35]   (*Id.*)

[36]   (*Id.* at 19-20.)

[37]   (*Id.* at 20.)

[38]   (Def.'s Reply, D.E. # 21, at 2.)

[39]   (*Id.*)

[40]   (*Id.* at 3.)

As a preliminary matter, the Court need not reach Plaintiff's integrated enterprise argument. Such a determination depends on the outcome of discovery, and because the Court is basing its personal jurisdiction holding on Plaintiff's declarations, discovery on the issue of personal jurisdiction is not necessary at this time. Furthermore, the parties' arguments regarding whether Defendant was included in Plaintiff's Letter of Determination and whether Plaintiff exhausted its administrative remedies is a matter of subject matter jurisdiction, not personal jurisdiction. Defendant has not filed a Motion to Dismiss for lack of subject matter jurisdiction on this ground. However, the Court has an affirmative duty to determine that it retains subject matter jurisdiction once that jurisdiction has been called into question, even in an informal matter.

Title VII authorizes the filing of a suit only "against the respondent named in the charge."[41] Thus, "a party not named in an EEOC charge may not be sued under Title VII."[42] However, an exception to this rule exists: an unnamed party may be sued if "there is a clear identity of interest between it and a party named in the EEOC charge."[43] Here, Claimant Baldwin's EEOC charge names his employer as "U-Haul" with an address of 3020 Lamar Avenue.[44] Thus, it appears to the Court that both Defendant and U-Haul Tennessee were named in the EEOC Charge, as U-Haul appears in both their names. Moreover, even if the Court were to interpret the EEOC Charge as applying only to U-Haul Tennessee, Defendant and U-Haul

---

[41]    42 U.S.C. § 2000e-5(f)(1).

[42]    *Romain v. Kurek*, 772 F.2d 281, 283 (6th Cir. 1985).

[43]    *Jones v. Truck Drivers' Local Union No. 299*, 748 F.2d 1083, 1086 (6th Cir. 1984).

[44]    (EEOC Charge, D.E. # 14-2, at 1.)

Tennessee have a clear identity of interest as U-Haul Tennessee is Defendant's wholly-owned

subsidiary.  Therefore, without the benefit of further briefing from the parties, the Court finds

that Defendant was named in the EEOC Charge, that Plaintiff exhausted its administrative

remedies, and that the Court retains subject matter jurisdiction over this case.

As for EEOC letters of determination, "the recitation of each claim of discrimination in

the EEOC's letter of determination is [not] a rigid prerequisite to the assertion of those claims by

the EEOC at trial."[45]  Letters of determination serve dual purposes: "to notify the employer of the

[EEOC's] findings and to provide a common ground for conciliation."[46]  However, this well-

accepted rule applies to claims stated in letters of determination rather than defendants named

therein.  Defendant's argument centers upon the EEOC's identification of reasonable cause that

U-Haul Tennessee, but not Defendant, violated Title VII.[47]  But Plaintiff indicated that

Defendant was "substantially involved throughout [its] investigation, determination, and

conciliation processes."[48]  Defendant did not refute this assertion in its Reply.  Therefore, in light

of the purpose of the Letter of Determination and Defendant's apparent role in the conciliation

process, the Court finds that the EEOC exhausted its administrative requirements in its Letter of

Determination.  Accordingly, the Court retains subject matter jurisdiction over Plaintiff's case

against Defendant, and it now turns to the personal jurisdictional issues.

---

[45]     *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1236 (6th Cir. 1980); *EEOC v. GMRI, Inc.*, No. 1:08-cv-02214, 2009 WL 2151788, at *6-7 (N.D. Ohio July 16, 2009) ("[T]he EEOC is not required to provide a detailed explanation of the factual basis or specific theory of legal liability in the determination letter.").

[46]     *McCall Printing*, 633 F.2d at 1236.

[47]     (Def.'s Mot., D.E. # 14-2, at 6.)

[48]     (Pl.'s Resp., D.E. # 18-1, at 18.)

The Court finds that Defendant is subject to personal jurisdiction in Tennessee. Under the *Southern Machine* test, Defendant satisfies the first element of purposeful availment. As detailed in Plaintiff's declarations, representatives from its Arizona headquarters frequently visited the Lamar Avenue location for a variety of purposes, from discussing allegations of race discrimination to performing surprise safety inspections. As such, Defendant reached out from its Arizona-based headquarters and entered Tennessee to forge relationships with U-Haul employees at the Lamar Avenue location. Second, some, but not all, of Defendant's contacts with Tennessee are related to the cause of action alleged in this suit. Plaintiff has sufficiently demonstrated that Defendant sent representatives to Tennessee to investigate allegations of racism at the Lamar Avenue location: thus, although Defendant's contacts with Tennessee did not cause or make possible Plaintiff's cause of action, its contacts about allegations of race discrimination relate to the subject matter of this case. Therefore, the second element of the *Southern Machine* test is satisfied, and an inference of reasonableness arises.

As for the third element, the Court finds that its exercise of jurisdiction over Defendant would be reasonable. Given the inference of reasonableness arising from the first two elements, the Court does not find this case to be the unusual case in which jurisdiction would not be reasonable. As demonstrated by Plaintiff's declarations, Defendant would not be overly burdened by the exercise of jurisdiction; it has sent representatives to Tennessee to interact with the Lamar Avenue location's employees, and those representatives requested the Tennessee-based employees to contact them with questions or problems. Moreover, because U-Haul Tennessee, Defendant's wholly owned subsidiary, is headquartered in Tennessee, the state of Tennessee has an interest in exercising jurisdiction over Defendant. Additionally, Plaintiff has

17

an interest in obtaining relief on Claimants' behalf. These factors weigh in favor of the Court's finding that its exercise of jurisdiction over Defendant is reasonable.

Therefore, because Plaintiff has met its burden to demonstrate that Defendant is subject to personal jurisdiction in Tennessee as discussed above, the Court finds that Tennessee has specific personal jurisdiction over Defendant. Accordingly, it need not reach Plaintiff's general jurisdiction arguments, and Defendant's Motion to Dismiss is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is **DENIED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: July 6, 2012.